Lucien LOUIS, et al., Plaintiffs,

v.

Doris MEISSNER, Acting Commissioner, Immigration and Naturalization Service, et al., Defendants.

No. 81–1260–Civ–ALH.

United States District Court,
S. D. Florida,
Miami Division.

Sept. 30, 1981.

Ira J. Kurzban, Vera Weisz, Miami, Fla., Bruce J. Winick, Coral Gables, Fla., Kenneth Panzer, Miami, Fla., Irwin P. Stotzky, Coral Gables, Fla., for plaintiffs.

Richard A. Marshall, Jr., Asst. U. S. Atty., Miami, Fla., for defendants.

## ORDER GRANTING TEMPORARY RESTRAINING ORDER

HASTINGS, District Judge.

THIS CAUSE, came on to be heard on plaintiffs' Renewed Motion for Temporary Restraining Order. Testimony was taken on September 8 and 9, 1981. Based on this and prior testimony, plaintiffs previously filed motions for temporary restraining order and for preliminary injunction, plaintiffs' memoranda in support of same, affidavits submitted by both parties, defendants' responses to interrogatories and requests for admissions, and documents placed in evidence, this Court finds that a sufficient showing has been made by plaintiffs to meet the requirements for a temporary restraining order.

## THE STANDARDS FOR A TEMPORARY RESTRAINING ORDER

There are four criteria which the moving party must meet in order to justify issuance of a temporary restraining order or preliminary injunction:

1. A substantial likelihood that the movant will eventually prevail on the merits;

2. The movant will suffer irreparable injury unless the injunction is issued;

3. The injury to the movant outweighs whatever danger the proposed injunction may cause the party or parties opposing the injunction, and that;

4. The injunction, if issued, would not be adverse to the public interest.

*Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 572–73 (5th Cir. 1974); *Di Giorgio v. Causey*, 488 F.2d 527 (5th Cir. 1973); *State of Texas v. Seatrain International, S. A.*, 518 F.2d 175 (5th Cir. 1975).

 It is also established in this Circuit that no particular quantum of proof is required as to each of the four criteria, but that the trial court should utilize a balancing-type approach in reviewing a preliminary injunction or temporary restraining order application. *State of Texas v. Seatrain International, S. A., supra*, at 180 ("none of the four prerequisites has a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus."); *Siff v. State Democratic Executive Committee*, 500 F.2d 1307 (5th Cir. 1974). While the grant of a preliminary injunction would be inappropriate where the movant party has little or no chance of success on the merits, the importance of this requirement varies with the relative balance of threatened hardships facing each of the parties. *Canal Authority of the State of Florida v. Callaway, supra*, at 576. Moreover, a showing that plaintiffs will be more severely prejudiced by a denial of the temporary restraining order or injunction then will defendants should it be granted, lessens the standard likelihood of success that must be met. *Id.*; See generally, Lubsdorf, The Standard for Preliminary Injunction, 91 *Harv.L.Rev.* 525 (1978).

While the plaintiffs must establish all four factors delineated in *Canal Authority*, the crucial question is whether preservation of the status quo is necessary in order to protect the court's ability to render a

meaningful decision on the merits. If a failure to grant temporary relief, will allow the defendant to harm the plaintiff in such a way that the court's ultimate decision in the plaintiff's favor becomes mere useless dicta, then a temporary restraining or preliminary injunction should issue.

## THE PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR UNDERLYING CLAIMS

In order to grant a temporary restraining order or a preliminary injunction in a case such as this, raising a number of separate claims for relief, it is sufficient if this court, finds that plaintiffs are likely to succeed on *any* of their claims, *See Tenants for Justice v. Hills*, 413 F.Supp. 389 (Ed.Pa.1975), so long as the ultimate victory on this claim could be rendered relevant by the defendants' actions in the interim.

## DENIAL OF ACCESS TO COUNSEL

On July 17, 1981, defendants began to remove members of plaintiffs' class out of the State of Florida and to various INS Detention Facilities located throughout the country. Approximately seven hundred of these refugees have been transported to Fort Allen, Puerto Rico, a former army base located in a remote area of the Island. Approximately fifty refugees have been transferred to Morgantown, West Virginia, located in the Northern West Virginia coal fields and having an approximate population of thirty thousand. An additional one hundred refugees were sent to Big Springs, Texas, a semi-desert city of approximately twenty-five thousand people, described as being about two hundred sixty miles west of Fort Worth, three hundred fifty miles east of El Paso, and "really not near anything." Approximately two hundred refugees were transferred to Lexington, Kentucky; approximately forty were transferred to Lake Placid, New York; approximately one hundred twenty were transferred to Otisville, New York; and approximately eighty-five were transferred to Brooklyn, New York. Approximately one thousand of these refugees remain in the Krome North Detention Facility, in Miami, Florida.

Having made a long and perilous journey on the seas to Southern Florida, these refugees, seeking the promised land, have instead been subjected to a human shell game in which the arbitrary Immigration and Naturalization Service has sought to scatter them to locations that, with the exception of Brooklyn are all in desolate, remote, hostile, culturally diverse areas, containing a paucity of available legal support and few, if any, Creole interpreters. In this regard, INS officials have acted as haphazard as the rolling seas that brought these boat people to this great country's shores. Indeed, even though INS officials have been rudderless in the enunciation and application of an immigration policy, when they decided to move the Haitians to these remote areas, they acted with laser-like precision. These refugees were removed from Miami, a city with a substantial immigration bar as well as volunteer lawyers from various organizations expressing an interest in representing these refugees. Miami also has a large Haitian population, and as a result, many Creole speaking individuals able to serve as translators to facilitate the attorney/client relationship, as well as community support groups and family members able to assist these refugees in their exclusion proceedings. From this relatively advantageous location from the prospective of the refugees, INS has distributed them to remote areas lacking attorneys with experience in immigration law, or for that matter, any attorneys at all willing to represent them. Moreover, these areas lack Creole speaking individuals able to act as translators. For example, the court heard testimony that there are no immigration lawyers in West Virginia, and that there are more Miami attorneys listed as specialists in immigration law in the Miami telephone book than there are attorneys in all of Monongolia County, (Morgantown) West Virginia.

Section 292 of the Immigration and Nationality Act, 8 U.S.C. § 1362, as well as INS Regulations, 8 C.F.R. § 236.2(b) provide that individuals subjected to exclusion

proceedings have the right to representation by counsel not at government expense. Although Congress did not provide appointed counsel, Congress clearly intended that individuals in this situation be permitted representation by attorneys willing to provide legal services. By transferring these refugees to desolate, remote areas, wholly lacking in counsel and/or Creole translators, INS has thwarted the statutory and regulatory rights of these refugees to representation in their exclusion proceedings.

In addition, the testimony established that at least in some instances, the notice concerning attorneys provided these refugees in the various locations, which purported to list names, addresses, and telephone numbers of attorneys able to provide representation, were inaccurate. In some instances, they contained stale information listing attorneys' telephone numbers, and addresses where they no longer had offices. On other occasions these lists were misleading, listing names of organizations which had publicly stated their inability to represent these refugees. In some locations, the testimony established that although telephone numbers were provided, there were no available telephones in the detention facility. The court notes the general unavailability of telephones in these facilities, and the obvious problems engendered by providing telephone numbers of attorneys in cities requiring long distance telephone calls.

### THE I–122 FORM

The charging instrument in an exclusion proceeding is the I–122 form. Its function is to notify individuals that they are about to be subjected to an exclusion proceeding, of their legal rights at such a proceeding, of the nature of the proceeding, and of the consequences thereof. The defendants have conceded that the I–122 form provided to Haitian refugees is in English only, and is not on its face translated into Creole. Although the government contends that all translations into Creole are made upon the service of I–122 form, the testimony and affidavits submitted establish that such translations were frequently omitted.

Moreover, this Court held a six day hearing in June, 1981 that established that even in Miami, where INS Creole translators are presumably proficient, the translations at these proceedings are woefully inadequate. Many of the key words necessary to provide adequate notice were not translated into Creole, but were rather translated into the French equivalent words that were unintelligible to these poorly educated individuals. The court is thus greatly concerned with the INS practice of in effect leaving the adequacy of notice to the varying abilities of translators throughout the country. In view of the negligible cost of providing written translations that would assure uniformity and accuracy in the provision of notice, this Court finds that plaintiffs have demonstrated the likelihood of succeeding on this point.

### NOTICE OF THE RIGHT TO FILE AN ASYLUM CLAIM

Section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158, as well as INS Regulations, 8 C.F.R. 208 *et. seq.* provide an elaborate procedure for the making of a political asylum claim. Defendants concede that they do not advise individuals of their rights under these provisions to file political asylum claims. Without the provision of such notice, the rights of Haitian refugees to file such claims, given their language literacy and educational problems, would be rendered meaningless. Not only does the INS have a statutory and regulatory obligation to give fair consideration to claims for political asylum, but treaty obligations to which this country is a party, the United Nations Convention and Protocol for the Status of Refugees, impose a parallel duty. The failure of INS to provide notice to the Haitians of their right to apply for political asylum at an early time also frustrates the Haitians' regulatory right to invoke the determination of the INS District Director on this issue, as provided in 8 C.F.R. §§ 208.1, 208.8. The court thus finds that plaintiffs have demonstrated their likelihood of success on this issue.

## OTHER ISSUES

Plaintiffs raise a number of other issues concerning the processing of Haitian refugees in exclusion proceedings, the order in which such processing is occurring and the fact that these refugees are held in detention rather than released to the community. Although the court has heard extensive legal argument on some of these points, and although plaintiffs have briefed them, the court, in view of its above findings, at this point finds it unnecessary to address these issues.

## IRREPARABLE HARM

Plaintiffs assert that without the temporary restraining order they seek, they will suffer irreparable harm in a number of ways. As the Fifth Circuit has held in *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974), "[a] preliminary injunction may be issued to protect the plaintiff from irreparable injury and to preserve the district court's power to render a meaningful decision after trial on the merits." The "primary justification" for granting preliminary injunctive relief, according to the Fifth Circuit, "is to preserve the court's ability to render a meaningful decision on the merits." *Id.* at 573. This Court finds that a temporary restraining order is necessary to preserve its ability to render a meaningful decision.

Without an injunction against the commencement or continuation of exclusion proceedings in these remote areas for unrepresented Haitians, these refugees will soon receive final orders of exclusion. Upon receiving such an order, they will, by that very fact, be excluded from the class, which is defined in terms of refugees who have *not* received final, non-reviewable order of exclusion. Not only will they be excluded from the class, and therefore be beyond the remedial powers of this Court, but under 8 U.S.C. § 1105a(b), upon the receipt of a final order of exclusion, the sole and exclusive judicial remedy is by means of habeas corpus. As a result, this statutory restriction on judicial review may remove this Court's ability to act at all for those receiving final order. Although this Court believes that its certification of the class is itself sufficient to protect all class members in their rights to the procedures that this Court might ultimately declare to be their due, § 1105a(b) could conceivably be construed in a way to divest this Court of its ability to render a meaningful decision on the merits that would accrue to the benefit of those receiving final orders of exclusion.

In addition, the testimony has amply established that many of the refugees in the remote areas are unrepresented and are unlikely to be represented, either at their exclusion proceedings, at any possible appeal to the Board of Immigration Appeals, or to obtain judicial review of the issuance of a final order of exclusion by habeas corpus. Without such representation, a refugee receiving a final order, will thus be subject to immediate exclusion and deportation from this country. Obviously, the removal from the country of any of the members of the class, will render it impossible for these individuals to receive any benefit from this Court's ultimate adjudication on the merits. Indeed, in an earlier point in these proceedings, INS deported eleven refugees to Haiti pursuant to procedures that the government later agreed were faulty. Unfortunately, the government's concession came too late to assist these eleven individuals. It is to prevent a similar problem that this Court must enjoin the deportation of unrepresented class members. Finally, although the court makes no specific findings on this point, the court does note the extensive findings made by Judge King in *Haitian Refugee Center v. Civiletti*, 503 F.Supp. 442 (S.D.Fla.1980), concerning the possibility of persecution and torture of refugees returned to Haiti.

## THE THREATENED INJURY TO PLAINTIFFS OUTWEIGHS ANY CONCEIVABLE HARM TO DEFENDANTS RESULTING FROM THE GRANT OF A TEMPORARY RESTRAINING ORDER

The only harm that could result to defendants as a result of the issuance of a

temporary restraining order consists of administrative inconvenience inherent in delaying the holding of hearings for the exclusion of refugees. Such administrative inconvenience is, of course, of no consequence in comparison to the potential losses which the plaintiffs may suffer if temporary relief is not granted. The government does not dispute that under its own statute and regulations, hearings are required. Plaintiffs are not asking that this Court impose on defendants a new, disruptive burden, but only that it delay the continuance of the procedure which must occur in any event. Since the government has not yet carried out hearings for many Cuban and Haitian refugees who arrived prior to the members of the class, it cannot credibly argue that immediate hearings for class members are necessary to avoid injury to it.

Moreover, if the planned hearings are legally defective—and this Court has serious concern as to their adequacy—then they must ultimately be repeated. It thus seems prudent for this Court expeditiously to adjudicate the substantial matters raised by plaintiffs concerning the procedures required by law in exclusion proceedings and avoid the wasted effort of requiring the government merely to repeat inadequate hearings.

## THE PUBLIC INTEREST WILL NOT BE DISSERVED

As this Court intends expeditiously to conclude this matter, the public interest will not be disserved by the short restraint on the government going forward in exclusion proceedings for unrepresented refugees. Indeed, the public interest would be served by clarifying the procedural requirements that defendants must adhere to so that they may go about their statutory duty of excluding unlawful aliens in a uniform manner consistent with the requirements of law. "Good administration of the statute is in the public interest and that will be promoted by taking timely steps when necessary to prevent violations even when they are about to occur or prevent their continuance after they have begun. *Walling v.*

*Brooklyn Braid Co., Inc.*, 152 F.2d 938 (2nd Cir. 1945).

■ Thus a temporary restraining order would best serve the public's interest. The public's interest is not served by continued acts violative of the law. Nor is it served by deportations which effectively make it impossible for the government to correct its errors and to see that justice is done. Under our system of law, the government owes these refugees the obligation fully to comply with all statutory, regulatory and treaty rights which these individuals may possess. The court has heard sufficient testimony to conclude that plaintiffs have made a substantial showing that, at least in some regards, defendants are forwarding the legal rights of these refugees. Moreover, based on testimony and affidavits submitted by plaintiffs, this Court is seriously concerned that some of these individuals may be deportation cases, rather than exclusion cases, and therefore entitled to full constitutional as well as statutory and regulatory protections. In addition, some may well be Cuban-Haitian entrants, and therefore improperly subjected to exclusion proceedings at this time. Finally, a number of the refugees transferred out of Florida have had attorneys from the Haitian Refugee Center, Inc. file notice of appearances (Form G–28) on their behalf. This constitutes a direct and substantial interference with an ongoing attorney-client relationship. Issues such as these would in effect be buried by the continuation or commencement of exclusion proceedings for unrepresented Haitian refugees.

## CONCLUSION

Based on the foregoing, it is hereby,

ORDERED AND ADJUDGED:

That defendants and their agents, employees, and successors, are hereby restrained from commencing or continuing exclusion proceedings for class members held at Fort Allen, Puerto Rico, Big Springs, Texas, Morgantown, West Virginia, and Lexington Kentucky who are unrepresented. In addition, defendants, their agents, employees, and successors, are re-

**930**

strained and enjoined from deporting any member of the class.

Based on the representation of government counsel that exclusion proceedings will not be commenced or continued for unrepresented Haitian refugees at the additional detention facilities, this Court finds it unnecessary formally to enjoin the government from holding such hearings for unrepresented Haitian refugees held at the Krome North Detention Facility, Miami, Florida, as well as INS Detention Facilities in Lake Placid, New York, Otisville, New York, Brooklyn, New York and any other INS Detention Facility.

## ORDER

SUA SPONTE, the Court finds that the Temporary Restraining Order entered this 30th day of September, 1981 NUNC PRO TUNC to September 9, 1981 has dissolved. In order to maintain the status quo and to be able to render a meaningful decision on the merits (trial on the merits of this cause has previously been advanced with the hearing on the preliminary injunction, Rule 65(a)(2)) said Temporary Restraining Order is hereby converted into and to be continued as a Preliminary Injunction. Defendants, by and through their agents and employees, are hereby enjoined from deporting all Haitian aliens who have arrived in the Southern District of Florida on or after May 20, 1981, who are applying for entry into the U. S. and who are presently held in detention pending exclusion proceedings at various *INS* detention facilities, for whom an order of exclusion has not been entered and who are unrepresented by counsel.