**1434**

COMMITTEE OF CENTRAL AMERICAN REFUGEES ("Comite De Refugiados Centro-Americanos" or "Crece"), Political Asylum Emergency Representation Program, et al., Plaintiffs-Appellants,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Meese, Edwin R., as Attorney General of the United States, Nelson, Alan C., as Commissioner of the Immigration and Naturalization Service, and Ilchert, David, as Director of the S.F. District of INS, Defendants-Appellees.

COMMITTEE OF CENTRAL AMERICAN REFUGEES, et al., Plaintiffs-Appellants,

v.

IMMIGRATION AND NATURALIZATION SERVICE, et al., Defendants-Appellees.

Nos. 85–2329, 85–2752.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 1986.

Decided July 31, 1986.

Liza Amtanis, Kevin R. Johnson, Heller, Ehrman, White & McAuliffe, Robert Rubin, San Francisco, Cal., for plaintiffs-appellants.

Joan E. Smiley, Dept. of Justice, Washington, D.C., for defendants-appellees.

Before ALARCON and WIGGINS, Circuit Judges, and STEPHENS,* District Judge.

ALARCON, Circuit Judge:

Plaintiffs/appellants, the Committee of Central American Refugees and the Political Asylum Emergency Representation Program (hereinafter the organizations), and eight individuals (hereinafter named individuals) representing a class of deportable aliens (hereinafter the alien class), appeal the district court's denial of their motions for preliminary injunctions. The district court refused: (1) to prohibit the transfer of members of the alien class who are unrepresented by counsel to facilities in El Centro, California, Florence, Arizona, and Las Vegas, Nevada, and (2) to direct the Immigration and Naturalization Service (hereinafter INS) to transport the named individuals detained at other facilities back to the San Francisco District of the INS (hereinafter San Francisco District). We affirm.

This case presents a very narrow question for our review at this interlocutory stage of the proceedings before the district court. We must determine whether the district court was correct in its conclusion that there was no fair chance of success on the merits of appellants' claim that a preliminary injunction may issue to prevent the Attorney General from exercising his discretionary power to choose the facility where deportable aliens are detained in the

absence of proof of a deprivation of the statutory privilege to retained counsel or a denial of any due process rights. We conclude that, based on the evidence adduced at the hearing on the motion for a preliminary injunction, the transfer of members of the alien class, and the individual named plaintiffs unrepresented by counsel, to detention centers outside the San Francisco District does not constitute a deprivation of any statutory privilege or due process right warranting judicial intrusion into the Attorney General's discretion to select the place of detention for deportable aliens who are in custody.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Appellants consist of the organizations and eight individuals representing a class of deportable aliens.[1] The organizations render free legal assistance to detainees in immigration proceedings. The plaintiff class is composed of "[a]ll persons from El Salvador and Guatemala who maintain their residence in the San Francisco District (District) of the Immigration and Naturalization Service (INS), who have been, are, or will be apprehended and detained in such District by officials of the INS, and who have been, are, or will be subject to transfer to the Alien Detention facilities at El Centro, California; Florence, Arizona; or Las Vegas, Nevada."

On March 6, 1985, the named individuals and plaintiff organizations filed a complaint against the INS in the district court alleging that the INS' policy of transferring aliens to remote detention facilities violated the due process clause of the fifth amendment because it effectively deprived them of the right to counsel, the right to gather and present evidence, and the right to apply for political asylum. Appellants also alleged that the INS violated its own policies by failing to advise them of their right

---

* Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation.

1. The eight named individual plaintiffs are Andres Miras-Villalta, Jaime Olano-Chicas, Robert Parraza, Rafael Montoya Mejia, Sebastian Francisco Miguel, Arnoldo Sanchez Melendez, Juan Pedro Francisco, and Jose Mario Olmos Gomez.

to be represented by counsel and of the availability of free legal services, and failing to set venue in San Francisco for aliens for whom efforts have been made to file G–28 forms (indicating that the alien is represented by counsel).

Appellants prayed for declaratory relief and a preliminary injunction prohibiting the INS from transferring members of the plaintiff class from the San Francisco District to detention facilities pending final resolution of the action, preliminary and permanent orders directing the INS to transport the named individuals detained at other facilities back to the San Francisco District, and a permanent injunction prohibiting the INS from (1) pursuing its transfer policy, (2) failing adequately to advise plaintiffs of their right to counsel and of the availability of free legal service in the District, and (3) transferring any class member already represented by counsel in the San Francisco District unless the alien consents to the transfer.

Simultaneously with the filing of their complaint, the organizations and the named individuals filed a separate motion for a preliminary injunction seeking (1) to enjoin the INS from transferring Salvadorans and Guatemalans arrested in the San Francisco District to INS facilities in El Centro, Florence, and Las Vegas, and (2) to direct the INS to return to the San Francisco District those plaintiffs already transferred.

The court stated that the test applicable in deciding whether a preliminary injunction should issue had not been satisfied. The district court stated that the government is not obligated to detain aliens where their ability to obtain legal representation is at its greatest, and that detention outside of the San Francisco District does not amount to a denial of due process. The district court concluded that it had "a serious question about the plaintiffs' chance for success on the merits." The court also noted that it had a question about the plaintiffs' standing because it was not clear

that they had exhausted their available administrative remedies. Finally, the court commented that it was impressed with the argument that prudential barriers developed as an adjunct to standing preclude judicial interference in the daily responsibilities of the executive branch. The district court denied the motion. The organizations and the named individuals filed a timely notice of appeal from this ruling.

On July 19, 1985, plaintiffs moved for class certification and filed a second motion for a preliminary injunction *on behalf of the class,* prohibiting the INS from transferring class members to the detention centers in El Centro and Florence. The district court granted the motion for class certification, but denied the motion for a preliminary injunction to preclude transfer of members of the class. The court concluded: (1) it should not interfere with the operations of the INS absent a clear and compelling reason to do so, (2) the plaintiff class had not satisfied the requirements for a preliminary injunction, and (3) prudential considerations precluded judicial intervention. The class filed a timely notice of appeal from this ruling. These appeals have been consolidated.[2]

## II. STANDARD OF REVIEW

Review of a ruling on a motion for a preliminary injunction is "very limited." *Apple Computer v. Formula International Inc.,* 725 F.2d 521, 523 (9th Cir.1984). " 'The decision to grant or deny is within the discretion of the trial court and will only be reversed if that discretion has been abused or if the decision is based on erroneous legal standards or clearly erroneous findings of fact.' " *People of Village of Gambell v. Hodel,* 774 F.2d 1414, 1419 (9th Cir.1985), *cert. granted,* —— U.S. ——, 106 S.Ct. 2274, 90 L.Ed.2d 717 (1986) (quoting *Oakland Tribuine, Inc. v. Chronicle Publishing Co.,* 762 F.2d 1374, 1376 (9th Cir. 1985)).

---

**2.** The INS does not appeal from the order certifying the plaintiff class. Such an order cannot be the subject of an interlocutory appeal. *Coo-*

*pers & Lybrand v. Livesay,* 437 U.S. 463, 465–69, 98 S.Ct. 2454, 2456–58, 57 L.Ed.2d 351 (1978).

## III. DISCUSSION

### A. Legal Standard Applied By The District Court

The district court concluded that the transfer of an unrepresented alien from the San Francisco District did not of itself demonstrate a violation of due process or the statutory privilege under 8 U.S.C. § 1362[3] to be represented by retained counsel at deportation proceedings. The district court also determined that prudential considerations precluded it from involving itself in supervising the daily exercise of the Attorney General's discretion concerning the transfer of detained aliens.

In holding that appellants had not satisfied the requirements for a preliminary injunction, the district court cited our decision in *Benda v. Grand Lodge of International Association of Machinists & Aerospace Workers*, 584 F.2d 308 (9th Cir.1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). In *Benda*, we explained the legal standard that must be applied in granting or denying a preliminary injunction in these words:

> The critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly. *Aguirre v. Chula Vista Sanitary Service*, 542 F.2d 779 (9th Cir.1976). No chance of success at all, however, will not suffice. The irreducible minimum has been described by one court as a fair chance of success on the merits, *McCormick v. Claytor*, 441 F.Supp. 622 (D.Oregon 1977), while another has said the questions must be serious enough to require litigation, *Aquirre, supra*. The difference between the two formulations

is insignificant. Therefore, we accept either as satisfactory.

*Id.* at 315.

After concluding that "[t]he government simply is not obligated to detain aliens where their ability to obtain representation is at its greatest," the district court stated that "there exists a serious question about the plaintiffs' chance for success on the merits." In light of the district court's express reliance on the legal standard set forth in *Benda*, we construe its statement that "there exists a serious question about the plaintiffs' chance for success on the merits" as a determination that appellants failed to demonstrate that they had a fair chance of success on the merits. In considering a district court's determination that the plaintiff has failed to demonstrate a fair chance of success on the merits, we review *de novo* the legal premises upon which the district court based its decision. *City of Tenakee Springs v. Block*, 778 F.2d 1402, 1404 (9th Cir.1985); *United States v. Oregon*, 718 F.2d 299, 303 n. 5 (9th Cir. 1983).

### B. Due Process Right And Statutory Privilege

Appellants and *amici* Bar Association of San Francisco and the Lawyers Committee for Human Rights argue that the transfer of members of the alien class to detention centers outside the San Francisco District, standing alone, constitutes a violation of due process justifying the issuance of a preliminary injunction to restrict the discretion of the Attorney General under section 1252(c).[4] Appellants have failed to cite any case which has authorized injunctive relief barring the Attorney General from exercising his discretion to determine the place of detention of aliens in the absence of proof

---

**3.** 8 U.S.C. § 1362 provides:

In any exclusion or deportation proceedings before a special inquiry officer and in any appeal proceedings before the Attorney General from any such exclusion or deportation proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.

**4.** 8 U.S.C. § 1252(c) provides: "The Attorney General is authorized and directed to arrange for appropriate places of detention for those aliens whom he shall take into custody and detain under this section."

of actual interference with an existing attorney-client relationship.

In *Nunez v. Boldin*, 537 F.Supp. 578, (S.D.Tex.), *appeal dismissed*, 692 F.2d 755 (5th Cir.1982), the alien class was detained in an area where there were no legal clinics and few private attorneys to represent them in deportation proceedings. *Id.* at 580, 581 & n. 1. The district court issued a preliminary injunction prohibiting (1) scheduling of deportation proceedings of detainees on whose behalf a form G–28 had been filed without first providing notice to the attorney of record, (2) restricting visiting hours unreasonably, and (3) restricting access to detainees by paralegals designated by the attorney. *Id.* at 580 & n. 1, 581–83. It should be noted the district court did not interfere with the Attorney General's discretion to select the detention facilities where aliens are to be detained.

*Amici* and appellants contend that *Louis v. Meissner*, 530 F.Supp. 924 (S.D.Fla.1981) supports their argument that a district court may grant injunctive relief which interferes with the Attorney General's discretion to decide where to detain aliens. In *Louis*, the INS transferred over one thousand Haitian refugees apprehended in Florida to remote INS detention locations, including Fort Allen, Puerto Rico; Brooklyn, New York, and to the Bureau of Prisons' facilities in places such as Otisville and Raybrook, New York; Latuna and Big Springs, Texas; Lexington, Kentucky; Morgantown and Alderson, West Virginia. *Id.* at 926; *see Louis v. Nelson*, 544 F.Supp. 973, 983 (S.D.Fla.1982). The Haitian refugees filed a class action seeking an injunction against the commencement or continuation of exclusion proceedings in these remote areas. The refugees asserted that they were denied access to counsel because, *inter alia*, (1) a number of refugees were represented by counsel in Florida prior to their transfer from Florida, 530 F.Supp. at 929, and (2) the areas where the detention facilities were located lacked attorneys experienced in immigration law who were willing to represent the refugees, and Creole speaking individuals who were able to act as translators, *id.* at 926. The district court in *Louis* granted the preliminary injunction and enjoined *deportation* of, and further *exclusion hearings* for, class members unrepresented by counsel. *Id.* at 929–30. The court did not issue an injunction restricting the Attorney General's discretion to select the place of detention nor did it order a transfer of members of the class.

*Amici* cite two unreported district court cases in which district courts in this circuit granted equitable relief based on proof that a change in the place of detention deprived the aliens of access to *previously* retained counsel.[5] Each case is readily distinguishable from the instant matter.

In *Bocanegra-Leos v. Dahlin*, No. 78–313 (D.Or. Apr. 7, 1978), the plaintiff was represented at deportation proceedings in Portland, Oregon, by a non-attorney legal advisor authorized to practice before the INS. The alien was ordered deported. He did not leave. He was arrested two months later. The INS failed to notify the alien or his counsel that a hearing was scheduled in El Centro, California. The alien was transferred to El Centro. The court found that the alien would not be able to confer with his counsel unless he was returned to Portland, Oregon. The court also found that substitute counsel was not reasonably available in El Centro. Based on these facts, the district court issued a temporary restraining order com-

---

5. The INS argues that these unreported cases have questionable precedential value, citing Ninth Circuit Rule 21(c). The INS' reliance upon Rule 21(c) is misplaced. Rule 21(c) prohibits citation to or by this court of unreported dispositions *of this court*. The cases cited by *amici* are decisions of *district courts*. Neither the Ninth Circuit Rules nor the local rules of the Northern District of California prohibit citation of unreported district court opinions. Indeed, this court has condoned the use of unpublished district court decisions to identify general policy considerations relevant to cases bearing a factual similarity to one another. *See M/V American Queen v. San Diego Marine Construction Corp.*, 708 F.2d 1483, 1491 (9th Cir.1983) (court may properly notice unpublished district court orders to identify general policy considerations relevant to the reasonableness of similar standardized contract limitations provisions).

manding the return of the alien to Portland, Oregon. Unlike the plaintiff in *Bocanegra-Leos,* the alien class in the instant matter does not seek a preliminary injunction ordering the return of its members to San Francisco. Instead, the alien class seeks an order prohibiting future transfers of aliens who have not retained counsel. *Bocanegra-Leos* was at all times represented by counsel prior to the transfer to El Centro, California. Thus, the transfer order interfered with an existing attorney-client relationship.

In *Chavez-Galen v. Turnage,* No. 80–485T (W.D.Wash. Feb. 3, 1981), the plaintiffs were detained at the McNeil Island Federal Penitentiary, Washington, while undergoing exclusion hearings and other proceedings. The aliens were represented by attorneys in Seattle who had "established on-going attorney-client relationships." The INS indicated that it would transfer the aliens outside the state of Washington. The district court issued a preliminary injunction enjoining the INS from transferring the aliens out of the area because "the established, on-going attorney-client relationship would effectively be destroyed."

Thus, in both unreported cases relied upon by the appellants, preliminary relief was granted because the aliens had presented evidence of an "established, on going" attorney-client relationship. In the matter before this court, the alien class requested an injunction to preclude a transfer notwithstanding the fact that no attorney-client relationship has been established.

■ An alien facing civil deportation proceedings has no constitutional right to appointment of counsel at government expense under the sixth amendment, *see Vides-Vides v. INS,* 783 F.2d 1463, 1469–70

(9th Cir.1986); *Magallanes-Damian v. INS,* 783 F.2d 931, 933 (9th Cir.1986). An alien has a fifth amendment right to receive due process in deportation proceedings. *Magallanes-Damian,* 783 F.2d at 933. Congress has also granted an alien the "privilege" of representation by counsel of his choice at his own expense. 8 U.S.C. § 1362. Where the facts demonstrate that there has been a denial of the privilege to be represented by counsel, we have ordered new deportation proceedings. *See Castro-Nuno v. INS,* 577 F.2d 577, 579 (9th Cir.1978) (immigration judge abused his discretion by failing to continue deportation hearing to allow alien who did not waive statutory right to counsel to locate previously retained counsel who was absent on that day); *Mendez v. INS,* 563 F.2d 956, 959 (9th Cir.1977) (INS' failure to notify alien's previously-retained counsel prior to deporting alien violated alien's statutory right to counsel); *accord Chlomos v. United States Department of Justice, INS,* 516 F.2d 310, 313–14 (3d Cir.1975) (notice of impending deportation proceeding should have been given to attorney of record; denial of continuances was abuse of discretion). The key factor present in each of these cases showing a constitutional deprivation is the existence of an established, on-going attorney-client relationship.

■ Appellants have failed to establish that under existing law, a district court is required to issue a preliminary injunction to prevent the transfer of an alien to a detention facility where movement does not interfere with existing attorney-client relationships. Accordingly, the district court did not err in concluding, as a matter of law, that the alien class and named individuals[6] did not have a fair chance of success on the merits because the transfer of un-

---

**6.** Six of the eight named individuals who had not established an attorney-client privilege prior to their transfer from the San Francisco District and therefore, did not show a violation of the due process rights or any statutory privilege, are Andres Miras-Villalta, Robert Parraza, Rafael Montoya Mejia, Sebastian Francisco Miguel, Juan Pedro Francisco, and Jose Mario Olmos Gomez.

The issues have been rendered moot as to the remaining two individuals, Jaime Olano-Chicas and Arnoldo Sanchez Melendez. Melendez was granted a change of venue for his deportation hearings from Florence to San Francisco, and Olmos-Chicas has left the United States.

represented aliens, standing alone, does not violate the due process clause or any statutory privilege.[7]

## C. Prudential Considerations

In addition to concluding that appellants have not established an actual violation of their due process right or statutory privilege to be represented by retained counsel, the district court also found that prudential considerations precluded interference with the Attorney General's discretion under the facts introduced at the hearings on the motions for preliminary injunctions. As noted above, we review *de novo* the legal bases for a district court's determination that the plaintiffs have failed to demonstrate a fair chance of success on the merits. *City of Tenakee Springs*, 778 F.2d at 1404; *United States v. Oregon*, 718 F.2d at 303 n. 5.

In reaching its decision denying the motions for a preliminary injunction, the district court was guided by the prudential barriers to judicial review of executive decisions discussed in *Winpisinger v. Watson*, 628 F.2d 133 (D.C.Cir.), *cert. denied*, 446 U.S. 929, 100 S.Ct. 1867, 64 L.Ed.2d 282 (1980). In *Winpisinger*, supporters of Senator Edward Kennedy in his campaign to win the Democratic Party's nomination as its candidate for President, sought declaratory and injunctive relief against allegedly illegal tactics of members of President Carter's administration designed to promote his renomination. 628 F.2d at 135. The court affirmed the district court's dismissal of the complaint "both on the basis of lack of standing and on the ground that prudential considerations would preclude the court from exercising jurisdiction in any event." *Id.* The D.C. Circuit pointed out that in order to grant relief, the court would have to interject itself into every facet of the Executive Branch on a continuing basis, and act as a management overseer. *Id.* at 139–40. Providing the requested relief would have brought the court and the Executive Branch into conflict "because the court would be placed in the position of evaluating every discretionary consideration...." *Id.* at 140.

Congress has placed the responsibility of determining where aliens are detained within the discretion of the Attorney General. "The Attorney General is authorized and directed to arrange for appropriate places of detention for those aliens whom he shall take into custody and detain under this section." 8 U.S.C. § 1252(c).

In *Harisiades v. Shaughnessy*, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1951) the Supreme Court stated:

"[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."

In *Hampton v. Mow Sun Wong*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1975), the Supreme Court noted that "the power over aliens is of a political character and therefore subject only to narrow judicial review." *Id.* at 101 n. 21, 96 S.Ct. at 1904 n. 21.

We have previously recognized the Attorney General's broad discretion in exercising his authority to choose the place of detention for deportable aliens.

In *Rios-Berrios v. INS*, 776 F.2d 859 (9th Cir.1985), we commented on the authority of the Attorney General under section 1252(c) as follows:

We wish to make ourselves clear. We are not saying that the petitioner should not have been transported to Florida. That is within the province of the Attor-

---

7. We emphasize that based on the facts presented at the hearing on the preliminary injunction, the alien class has not made out a case for preliminary injunctive relief. As we noted in *Gambell*, "[t]his matter is before us on an inter-locutory appeal. We do not know what the evidence will be at trial. In the absence of a fully developed trial record, we cannot now decide whether a permanent injunction should issue in this matter." 774 F.2d at 1426 n. 2.

ney General to decide. 8 U.S.C. § 1252(c).

*Id.* at 863.

Rios-Berrios was arrested at San Ysidro, California, and was subsequently transferred to a detention center in Florida. *Id.* at 860. His deportation hearing commenced in Miami, Florida five working days after the date of his apprehension. *Id.* The record did not disclose if he was advised at the deportation hearing of his right to counsel or of the availability of free legal counsel. The petitioner advised the immigration judge that he needed time to find a lawyer. *Id.* at 860–61. The immigration judge continued the case for one working day and warned the petitioner that the hearing would go forward with or without counsel. *Id.* at 861. The petitioner appeared without counsel. He advised the court that he had called a friend who had been in contact with a lawyer. The immigration judge continued the matter for 24 hours. The petitioner appeared again without counsel. The court made no further inquiry concerning his wish to be represented by counsel. "[T]he taking of evidence commenced immediately." *Id.* We held in *Rios-Berrios* that the *combination* of factors presented in that matter resulted in a, denial of due process mandating vacation of the deportation order. *Id.* at 863. We stated that the transfer of the alien to Florida

> *combined with the unexplained haste in beginning deportation proceedings, combined with the fact of petitioner's incarceration, his inability to speak English, and his lack of friends in this country,* demanded more than lip service to the right of counsel declared in statute and agency regulations, a right obviously intended for the benefit of aliens in petitioner's position.

*Id.* (emphasis added). We granted relief in *Rios-Berrios* because of the failure of the immigration judge to grant a continuance *at the new place of detention* and not because of any abuse of discretion by the Attorney General in ordering the transfer.

■ As we discussed above, relief was granted in *Bocanegra-Leos* and *Chavez-Galen* because the evidence showed that the transfer of aliens would interfere with an existing attorney-client relationship. The district court correctly determined that, in the absence of any evidence of a violation of due process or the statutory privilege to be represented by retained counsel, prudential considerations precluded it from exercising its jurisdiction to avoid involving itself in the supervision of the Attorney General's daily exercise of his discretion to select the place of detention of aliens in his custody. The district court did not err in concluding that under applicable precedent, the facts adduced at the preliminary hearing did not establish that appellants had a fair chance of success on the merits.

### D. Irreparable Injury

■ To obtain a preliminary injunction, plaintiffs have the burden of demonstrating the possibility of irreparable injury in addition to a fair chance of success on the merits. *Benda,* 584 F.2d at 314 (citing *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86, 88 (9th Cir.1976)). Where, as here, a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo *pendente lite,* "courts should be extremely cautious" about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff. *Martin v. International Olympic Committee,* 740 F.2d 670, 675 (9th Cir.1984); *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir.1980). The organizations and the named individuals sought mandatory injunctive relief directing the INS to transport the named individuals back to the San Francisco District of the INS. Appellants also sought prohibitory injunctive relief to enjoin the transfer of members of the alien class who are unrepresented by counsel to detention facilities in El Centro, Florence, and Las Vegas.

Appellants did not present facts at the hearings on their motions for preliminary

injunctions demonstrating an interference with their due process or statutory privilege to be represented by retained counsel. Appellants failed to show that they would suffer irreparable harm to a protectible constitutional right or statutory privilege if their requests for preliminary injunctions were denied. Thus, the balance of hardships did not tip sharply in their favor.

The orders of the district court denying appellants' motions for preliminary injunctions are AFFIRMED.

