**Nestor Rodrigo
RIOS–BERRIOS, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

No. 84–7275.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 1985.

Decided Nov. 15, 1985.

Howard Dawson, Los Angeles, Cal., for petitioner.

Evelyn Matteucci, Los Angeles, Cal., for respondent.

Before CHAMBERS, TANG and WIGGINS, Circuit Judges.

CHAMBERS, Circuit Judge:

Rios-Berrios petitions for review of the decision of the Board of Immigration Appeals (B.I.A.) ordering his deportation and denying his application for asylum or withholding of deportation. While he argues that the evidence is not sufficient to support the decision, he also contends that he was denied the opportunity to obtain counsel of his own choice in violation of applicable statutes and regulations and in violation of his guarantee of a fair trial under the Due Process Clause of the Fifth Amendment. As the legal representation issue is of primary concern to us, we will set out the facts in some detail.

## FACTUAL BACKGROUND

Petitioner was arrested at San Ysidro, near San Diego, California, on Saturday, January 22, 1983. At about 5:00 p.m. that day he was served with an order to show cause, charging him with being a citizen of El Salvador who had entered this country without inspection on January 22, 1983, and directing him to appear at "Krome N. Florida, Miami Florida," without date or time specified, to show cause why he should not be deported. On the back of the order to show cause were several notices to petitioner informing him of his right to be represented by counsel of his own choice, of the necessity to have his documents and witnesses present at the hearing, and of bail having been set at $4,000. He indicated that he wished to have bail redetermined. He also signed his name to a statement saying, "To expedite determination of my case, I request an immediate hearing and waive any right I may have to more extended notice." There is an indication at the bottom of the form that the "above advisement" had been read to petitioner in Spanish and "Form I-618" and the "Legal Services notice" had been served. Neither document is in the record.

The record does not disclose when, or by what means, petitioner was removed from San Ysidro to the Krome Processing Center in Florida, or when he received any notice of the date and time of his deportation hearing. It is clear, however, that he was in custody at all relevant times and that the deportation hearing was begun the following Friday, on January 28, 1983, in effect five working days from the time of his apprehension. The record does not disclose that he was advised at that hearing of his right to counsel of his own choice or of

the availability of free legal counsel. It merely contains a statement of the immigration judge that in light of petitioner's statement that he needed time to find a lawyer, the hearing would be continued to 9:00 a.m. on Tuesday, February 1, 1983, in effect one working day thereafter, and he was warned that the hearing would go forward with or without counsel. Petitioner appeared without counsel on February 1, and stated that he had called a friend who had been in contact with a lawyer and a bail bondsman, but that he had heard nothing more. The immigration judge instructed him that the hearing would be continued for an additional 24 hours but again warned that if he appeared the next day without counsel, the hearing would proceed. On the following day petitioner appeared without counsel. There was no inquiry as to his expressed wish to be represented by counsel; the taking of evidence commenced immediately.

In response to questions of the immigration judge and the government attorney, petitioner admitted that he was a citizen of El Salvador and that he had entered the country without inspection on January 22, 1983. He was immediately found to be deportable but, when the immigration judge asked the country to which he wished to be deported, petitioner responded that he did not wish to return to El Salvador and that he wanted to apply for asylum. The government attorney provided the necessary form, instructed him that it had to be on file by February 14, 1983, and that interpreters at the camp were available to help him. The deportation hearing was then adjourned to await the hearing on the application for asylum.

Petitioner filed a timely application for asylum, without the assistance of counsel, on February 10. On February 25 the State Department was asked for its advisory opinion and an undated response contains no reference to the facts of the petitioner's case but concludes, using the words of 8 U.S.C. § 1101(a)(42)(A), that the applicant failed to establish "a well-founded fear of being persecuted in El Salvador on account of race, religion, nationality, membership in a particular social group, or political opinion." The deportation hearing was reconvened at the Krome Processing Center on March 17, 1983, to consider the asylum application. Petitioner is shown as appearing in propria persona and nothing was said of his earlier declaration of his wish to be represented by counsel. The immigration judge proceeded immediately to take evidence on the asylum issue. Petitioner was asked if he had read the State Department advisory. He replied that he had not and it was translated for him. Following questioning of petitioner, the immigration judge ruled from the bench that he was not eligible for asylum. He also instructed petitioner that he had the privilege of voluntary departure if he could establish good moral character for the preceding five years, and if he had sufficient funds to pay his own way. He was asked if he believed he qualified for this. He responded "No." There was no further inquiry on the matter.

Petitioner was advised of his right to appeal. He did so, signing a document that had been furnished him in which he waived oral argument.

It is unclear from the record when an attorney first entered his case, but there is correspondence from a government official to his attorney dated in mid-June 1983. At about the same time petitioner secured his release from custody on bond. The attorney represented petitioner at a hearing before the B.I.A., but the denial of asylum was affirmed and his "other contentions" were found to be without merit, i.e. the B.I.A. held that the two continuances were "reasonable and sufficient" to permit petitioner time to obtain counsel, and that his denial of voluntary departure was knowingly and intelligently made.

What we know of petitioner, on this record, is of course very limited. He was 29 years of age, had a 10th grade education, spoke only Spanish, had been employed in El Salvador as a security guard, exterminator, or produce packer, and when apprehended at San Ysidro was en route to

Los Angeles where his minor son resided with the son's mother. He had no other friends or relatives in this country.

## RIGHT TO COUNSEL

An alien is entitled to due process under the Fifth Amendment in his deportation hearing. *United States v. Barraza-Leon*, 575 F.2d 218, 220 (9th Cir.1978). Although a deportation hearing is not a criminal matter and he had no Sixth Amendment right to appointment of counsel at government expense, *United States v. Gasca-Kraft*, 522 F.2d 149, 152 (9th Cir.1975), due process mandates that he is entitled to counsel of his own choice at his own expense under terms of the Immigration and Nationality Act. Section 292 of the Act, 8 U.S.C. § 1362 (1982), makes that privilege explicit. Section 242(b) of the Act, 8 U.S.C. § 1252(b), directs the Attorney General to adopt regulations to assure the integrity of the deportation process (e.g. reasonable notice of charges, reasonable opportunity to present and examine evidence, sufficiency of evidence to support deportability, etc.). The Act specifically requires the adoption of regulations to assure the right of counsel of one's choice. 8 U.S.C. § 1252(b)(2).

Regulations in effect at the time of petitioner's deportation hearing (and references herein to Title 8 C.F.C. are to those regulations revised as of January 1, 1983) stated this right to counsel, 8 C.F.R. § 242.10, at no expense to the government, 8 C.F.R. § 242.10(c), and provided that the alien be notified of his right to such counsel and be given a list of available free legal services at three specific times: when he is served with the order to show cause, 8 C.F.R. § 242.1(c), when the warrant is served, 8 C.F.R. § 242.2, and at the deportation hearing, C.F.R. § 242.16(a). Another regulation required at least seven days notice of the date and time of the deportation hearing except when less notice was requested by the alien, or was necessary for purposes of security. 8 C.F.R. § 242.-1(b).

Section 242.13 of 8 C.F.R. states that a continuance to permit the petitioner to obtain counsel "shall not be granted more than once unless sufficient cause for the granting of more time is shown."

Applications for asylum, 8 U.S.C. § 1158(a), and for mandatory withholding of deportation, 8 U.S.C. § 1253(h), are considered and decided within the deportation hearing when filed after that hearing has begun. 8 C.F.R. §§ 208.3(b) and 208.10. Statutory and regulatory provisions applicable to deportation hearings are thus applicable to the asylum and withholding of deportation phases of such hearings.

It is clear that the decision to grant or deny continuances is in the sound discretion of the trial judge and will not be overturned except on a showing of clear abuse. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849–850, 11 L.Ed.2d 921 (1964); *United States v. Clevenger*, 733 F.2d 1356, 1359 (9th Cir.1984); *United States v. Ortiz*, 603 F.2d 76, 78 (9th Cir. 1979) *cert. denied* 444 U.S. 1020, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980). Experience tells us that in most situations we should defer to the trial judge's decision in granting or denying the continuance. But the rule is not without limits, as noted in *Ungar v. Sarafite*, 376 U.S. at 589, 84 S.Ct. at 849–850:

> ... a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.... There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. (Citations omitted.)

We have little difficulty in finding that the immigration judge's grant of two continuances, which amounted to little more than two working days' time, was an abuse of discretion. The petitioner was in custody, spoke only Spanish, had limited education, was unfamiliar with this country and its legal procedures, and had been re-

moved nearly 3,000 miles from his only friend in this country. Reliance by the B.I.A. on 8 C.F.R. § 242.13 and its limitation of one continuance for purposes of securing legal representation, on the facts of this case, makes a mockery of the clear statutory mandate that a person in petitioner's position has the right to counsel of his own choice. In the circumstances of this case, the immigration judge, *sua sponte* if necessary, should have continued the hearing so as to provide the petitioner a reasonable time to locate counsel, and permit counsel to prepare for the hearing. *Castro-Nuno v. I & NS*, 577 F.2d 577, 579 (9th Cir.1978).

The B.I.A. did not conclude that petitioner waived his right to counsel by his silence, after the immigration judge proceeded with the deportation hearing, without counsel, on February 2. It concluded merely that the two continuances were "reasonable." The INS, however, contends that petitioner did waive his right to counsel by not repeating, on February 2, that he wished to be represented by counsel. The record demonstrates that the immigration judge proceeded instantly to take evidence, an action that would intimidate an alien appearing before him, particularly after the chilling warning that the hearing would proceed and that no further continuances would be granted. We will not hear the INS argue waiver on the facts of this record.

We wish to make ourselves clear. We are not saying that the petitioner should not have been transported to Florida. That is within the province of the Attorney General to decide. 8 U.S.C. § 1252(c). We merely say that his transfer there, combined with the unexplained haste in beginning deportation proceedings, combined with the fact of petitioner's incarceration, his inability to speak English, and his lack of friends in this country, demanded more than lip service to the right of counsel declared in statute and agency regulations, a right obviously intended for the benefit of aliens in petitioner's position.

The INS argues that any error was harmless, citing in particular *Matter of Santos*, Int.Dec. 2969 (June 26, 1985), in which the B.I.A. held that there is no due process violation without a showing of prejudice.* On the other hand, petitioner urges us to follow *Casteneda-Delgado v. INS*, 525 F.2d 1295, 1300 (7th Cir.1975) and *Yiu Fong Cheung v. INS*, 418 F.2d 460 (D.C.Cir.1969), neither of them recent decisions, to the effect that there can be no harmless error when the right to counsel is involved. We are aware of this court's position that in due process challenges there must be a showing of prejudice, *United States v. Nicholas-Armenta*, 763 F.2d 1089, (9th Cir.1985), but we note that the right to counsel was not involved there. We leave to another day the issue of whether there must be a showing of prejudice in a case in which counsel has been effectively denied. It is clear to us that in this case lack of counsel in the hearings, particularly on the issues of voluntary departure, and asylum or mandatory withholding of deportation, was prejudicial to petitioner. We have serious doubts as to how knowing and intelligent the waiver of voluntary departure was; moreover, we are convinced that his asylum case will be more advantageously presented by retained counsel.

We are not in favor of an agency treating the statutes and regulations by which it is governed as casually as it viewed them here. We will continue to take a close look

---

* But *Santos* is not persuasive because authority relied on by the the B.I.A. for its *Santos* position contains no authority from this circuit, or any other circuit, to the effect that prejudice must be shown in cases involving a denial of the right to obtain counsel. Rather, the cited cases involved either a waiver of the right to counsel or a failure by the alien to dispute the underlying charge on appeal. *See Ramirez v. I & NS*, 550 F.2d 560 (9th Cir.1977) (waiver); *Martin-Mendoza v. I & NS*, 499 F.2d 918 (9th Cir.1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 789, 42 L.Ed.2d 810 (1975) (counsel present at all but one brief session); and *Sumio Madokoro v. Del Guercio*, 160 F.2d 164 (9th Cir.), *cert. denied*, 332 U.S. 764, 68 S.Ct. 68, 92 L.Ed. 349 (1947) (admission eliminated any possible defense with which attorney could have assisted).

at a claim such as that raised by petitioner, especially where so fundamental a question as right to counsel of one's choice is concerned. *See Duran v. INS*, 756 F.2d 1338 (9th Cir.1985); *Mendez v. INS*, 563 F.2d 956, 959 (9th Cir.1977).

The petition for review is granted, the order for deportation is vacated, and the case is remanded to permit new proceedings to resolve *inter alia* the issues of deportability, voluntary departure, and asylum and related relief.