968 F.2d 1220
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Harte Valentino BARBER, Petitioner,
v.
UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 91-70204.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 10, 1992.
Decided July 20, 1992.
 
 Before ALARCON, RYMER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Harte Valentino Barber petitions for review of an order of the Board of Immigration Appeals ("BIA") denying his application for discretionary relief from deportation under section 212(c) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(c) and his request for political asylum under section 208(a) of the INA, 8 U.S.C. § 1158(a). Barber contends that the BIA denied relief from deportation because it did not adequately consider the outstanding equities in his favor. He asserts that the BIA failed to grant him political asylum because it erroneously concluded that he did not have a well-founded fear of persecution.
 
 I.
 
 3
 Barber has been living in the United States as a lawful permanent resident since he entered the country on May 5, 1980 at the age of twenty-three. On May 4, 1983, he was convicted in the state of Washington of the crime of murder in the first degree while armed with a deadly weapon. He was sentenced to life imprisonment. He is presently confined at McNeil Island Correction Center.
 
 
 4
 In 1988, the Immigration and Nationality Service ("INS") commenced proceedings to deport Barber pursuant to section 241(a)(4) of the INA, 8 U.S.C. § 1251(a)(2(A)(i).[1] At Barber's deportation hearing, the immigration law judge ("ILJ") found that Barber was a deportable alien under the INA. Barber requested relief under section 212(c) of the INA, 8 U.S.C. § 1182(c); section 208 of the INA, 8 U.S.C. § 1158(a); and section 243(h)(2)(B) of the INA, 8 U.S.C. § 1253(h)(2)(B)[2]. The ILJ denied relief on all the grounds raised by Barber. On appeal, the BIA affirmed the ILJ's decision.
 
 II.
 
 5
 Under section 212(c), the BIA has discretion to waive deportation of an otherwise excludable alien. Ayala-Chavez v. INS, 944 F.2d 638, 640 n. 2 (9th Cir.1991). In deciding whether an alien merits relief under section 212(c), the BIA "must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf." Matter of Marin, 16 I. & N. Dec. 581, 584 (BIA 1978).
 
 
 6
 The alien requesting relief under section 212(c) bears the burden of showing that he merits exclusion from deportation. Matter of Roberts, Interim Decision 3148, 7 (BIA 1991). When an alien has been convicted of a serious crime, he must demonstrate "unusual or outstanding equities" in order to qualify for relief from deportation. Matter of Edwards, Interim Decision 3134, 7 (BIA 1990). However, "an alien who demonstrates unusual or outstanding equities, as required, does not compel a favorable exercise of discretion; rather, absent such equities, relief will not be granted." Id. An applicant with a criminal record ordinarily is also expected to show rehabilitation. Matter of Roberts, at 8.
 
 
 7
 We review the BIA's denial of relief from deportation under section 212(c) for abuse of discretion. Ayala-Chavez, 944 F.2d at 642; Vargas v. INS, 831 F.2d 906, 908 (9th Cir.1987). We will reverse the BIA's decision only if the BIA "fails to support its conclusions with a reasoned explanation based upon legitimate concerns." Vargas, 831 F.2d at 908.
 
 
 8
 In determining whether Barber had demonstrated the unusual or outstanding equities necessary to obtain a relief from deportation under section 212(c), the BIA noted that Barber had resided in the United States for the past eleven years. However, it accorded less weight to that factor because he had been incarcerated for almost eight years of that period.
 
 
 9
 Barber's close relationship with his mother, father, and siblings, all of whom reside in the United States, was not disputed. Although the oldest son in Filipino culture is expected to advise the younger sons, none of these family members depend on Barber for financial support. Barber has no immediate family of his own to support.
 
 
 10
 The Board also considered Barber's history of gainful employment, his exemplary prison record, the favorable attestations to his character, and the civil violence in the Philippines as equities which favored Barber's request for relief. It nevertheless concluded that these "significant" equities were outweighed by the conviction for first-degree murder.
 
 
 11
 Barber asserts that the ILJ erred in finding that he had not demonstrated rehabilitation. The ILJ stated that an alien who continued to maintain his innocence had failed to accept responsibility for his crime. The ILJ concluded that Barber's failure to accept responsibility for his murder conviction undermined Barber's assertion of rehabilitation. We find no error in the ILJ's determination. See Matter of Salmon, 16 I. & N. Dec. 734, 737-38 (1978) (confined aliens will have more difficult time showing that discretion should be exercised in their behalf).
 
 
 12
 Moreover, the BIA did not deny relief because Barber had failed to show rehabilitation. It concluded that even if Barber had demonstrated rehabilitation, the seriousness of Barber's conviction for first-degree murder outweighed the equities in his favor. The BIA fully considered the equities in Barber's favor when it denied relief under section 212(c). Accordingly, the BIA did not abuse its discretion in denying Barber relief from deportation.
 
 III.
 
 13
 Barber also asserts that the BIA erroneously determined that he had not demonstrated the well-founded fear of persecution required for relief under section 208(a) of the INA. We disagree.
 
 
 14
 In determining whether a petitioner has demonstrated a well-founded fear of persecution, we examine two factors: (1) whether the alien has a subjective fear of persecution, and (2) whether this fear has an objective basis supported by substantial evidence such that it can be considered well-founded. De Valle v. INS, 901 F.2d 787, 790 (9th Cir.1990). The alien must present "credible, direct, and specific evidence" which demonstrates that a reasonable person in the alien's circumstances would be fearful of persecution. Estrada-Posadas v. INS, 924 F.2d 916, 918 (9th Cir.1991). The evidence must "indicate that the alien's predicament is appreciably different from the dangers faced by the alien's fellow citizens." Vides-Vides v. INS, 783 F.2d 1463, 1469 (9th Cir.1986).
 
 
 15
 Barber argues that the ILJ's reliance on an affidavit which undermined the credibility of his persecution claim violated section 242(b)(3) of the INA, 8 U.S.C. § 1252(b).[3] Barber also asserts that the ILJ misstated certain facts in its order. However, any error committed by the ILJ in admitting the affidavit or erroneously finding facts was rectified by the BIA. The BIA stated that it had not relief on the affidavit "insofar as it may adversely bear on the credibility of the respondent's persecution claim." It also stated that it had reviewed the record de novo so that Barber would not be "prejudiced by any alleged factual errors on the part of the immigration judge." In evaluating Barber's political asylum request, the BIA assumed "that the factual basis of [Barber's] claim is worthy of belief."
 
 
 16
 Since Barber has not demonstrated any past persecution in the Philippines, we must determine whether the facts alleged by Barber demonstrate a well-founded fear of future persecution. Barber presented three reasons why his fear of persecution by communist insurgency groups in the Philippines is reasonable. First, he asserted that he has been targeted for assassination by communist rebels because he acted as an anti-communist informant from 1977 to 1980 in the province of Luzon. The Luzon region has a powerful communist presence. Second, he contended that his close friendship with Elvira Cadiente, the secretary of the mother of Ferdinand Marcos, demonstrates that he would be subject to persecution in the Philippines. Cadiente's father was executed by communist insurgents. Finally, he submitted evidence to show that his father's cousin, Randall Echanis, was a communist leader who was persecuted by the Marcos regime. Echanis was arrested by Gregoria Honassan. Honassan led a 1989 coup attempt against Cori Aquino.
 
 
 17
 The BIA's determination that a reasonable person in Barber's circumstances would not fear persecution is supported by substantial evidence. Assuming that Barber's informant activities would subject him to retaliation by the rebels in the Luzon province, he has not demonstrated that he would be persecuted in other areas of the country. We agree with the BIA that "there is nothing to show that [the communists] have either the desire or the capability to track down a local informer who moves to another area of the country, much less one who has been outside of the Philippines for some 11 years." See Quintanilla-Ticas v. INS, 783 F.2d 955, 957 (9th Cir.1986) (even if a deportee would face danger in his home town, deportation does not require that he return to the area of the country where he used to live); Diaz-Escobar v. INS, 782 F.2d 1488, 1493 (9th Cir.1986) (repatriation to a country does not force an alien to return to the village he left).
 
 
 18
 While the assassination of Elvira Cadiente's father by insurgents and the arrest of his father's cousin demonstrates that serious civil disorder exists in the Philippines, it does not support Barber's assertion that he would be individually persecuted. His relationship with these persons does not to demonstrate that a reasonable person in Barber's circumstances would fear persecution. In fact, Barber admitted at the administrative hearing that the evidence pertaining to Randall Echanis "goes to our proof that we're dealing here with a home country at civil war where families kill each other intentionally or unintentionally." Dangers caused by general conditions of civil unrest do not qualify an applicant for asylum. Lopez v. INS, 775 F.2d 1015, 1017 (9th Cir.1985). Accordingly, we affirm the BIA's denial of Barber's asylum application.
 
 
 19
 Barber contends that since he is presently unrepresented by counsel, dismissal of his petition would "amount to administrative execution based on indigency." His assertion lacks merit. At a deportation hearing, an alien is entitled to due process under the Fifth Amendment. Rios-Berrios v. INS, 776 F.2d 859, 862 (9th Cir.1985). The alien is therefore allowed "counsel of his own choice at his own expense." Id. (emphasis added). The Government is not obligated to provide an alien with counsel at any point in the proceedings. See 8 U.S.C. § 1362 ("In any exclusion or deportation proceeding ... the person concerned shall have the privilege of being represented (at no expense to the Government ) by such counsel, authorized to practice in such proceedings, as he shall choose.") (emphasis added). Moreover, Barber received the assistance of counsel until the time that the decision was appealed to the BIA.
 
 
 20
 Barber also asserts that the ILJ erred in characterizing him as an "aggravated felon." The record does not show that either the ILJ or the BIA characterized him as an "aggravated felon" when they denied relief from deportation.
 
 
 21
 Finally, Barber contends that we should consider newly discovered evidence which undermines the validity of Barber's 1983 murder conviction. The BIA had already reached a decision when it received notice of the new evidence. It informed Barber that a motion "must be filed with the Office of the Immigration Judge with notice of service on the opposing party" in order to reopen a decision of the Board. Barber has failed to do so. We cannot receive new evidence allegedly relating to the validity of Barber's state conviction for murder in this proceeding. See United States v. Lucas, 1992 WL 82937, at * 3 (9th Cir. April 28, 1992) (holding that a party cannot raise a new factual issue on appeal where the party failed to raise the issue or present the evidence in a timely fashion before the trial court).
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Section 241(a)(4) of the INA provides, in pertinent part, that:
 Any alien in the United States ... shall, upon the order of the Attorney General, be deported if the alien ... (I) is convicted of a crime involving moral turpitude committed within five years after the date of entry, and (II) either is sentenced to confinement or is confined therefor in a prison or correctional institution for one year or longer.
 8 U.S.C. § 1251(a)(2)(A)(i).
 
 
 [2]
 Barber has not contested his statutory ineligibility for relief under section 243(h)(2)(B) of the INA in this appeal
 
 
 [3]
 Section 242(b)(3) provides that aliens shall have a reasonable opportunity to cross-examine witnesses presented by the government