87 F.3d 1326
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ahmad ZOMER-MAHER, a.k.a. Ahmad Abed Maher, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70788.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 11, 1996.*
Decided June 19, 1996.
 
 Before: CANBY, NOONAN, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ahmad Zomer-Maher, a native of Gaza, petitions for review of the decision of the Board of Immigration Appeals ("BIA") ordering him deported to Jordan. In his petition for review, he challenges the decision of the immigration judge ("IJ") to deny his request for a continuance of his deportation hearing. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a) and grant the petition for review.
 
 
 3
 * Background
 
 
 4
 On May 24, 1986, Ahmad Zomer-Maher, who was born in Gaza and raised in the United Arab Emirates, entered the United States as a non-immigrant student with authorization to remain in the United States for a specified period of time. He remained longer than authorized. On December 15, 1994, the Immigration and Naturalization Service ("INS") issued Zomer-Maher an Order to Show Cause why he should not be deported because of his overstay.
 
 
 5
 On December 22, 1994, Zomer-Maher appeared pro se at his initial deportation proceeding. When asked by the IJ whether he needed time to look for an attorney, Zomer-Maher stated that he had spoken to a Mr. Bart Klein, Esq., but that counsel Klein had not had the opportunity to visit with him yet. Upon hearing Zomer-Maher's statement regarding his effort to obtain counsel, the IJ suggested that it would "be a good idea to postpone this matter," a suggestion agreed to by Zomer-Maher. The IJ, thus, reset the deportation hearing for January 5, 1995, stating that he would be unavailable until that time because he would be on vacation the week prior to January 5, 1995. Zomer-Maher, who was detained by the INS at the time, asked the IJ if "there [was] any way [he] could get it sooner," to which the IJ responded that there would be no time.
 
 
 6
 On January 5, 1995, Zomer-Maher's hearing resumed with counsel Bart Klein representing Zomer-Maher. At the hearing, Zomer-Maher conceded deportability, and requested a continuance to explore possible avenues of relief. When asked by the IJ how much time he would need, Zomer-Maher's counsel engaged in the following exchange with the IJ:
 
 
 7
 A. Well, you know, I would like to have 30 days to file what I can and whatever relief I can, or no relief.
 
 
 8
 * * *
 
 
 9
 Q. Well, it looks like we could--you'd have some idea of the relief, wouldn't you, within a week or two?
 
 
 10
 A. Within 10 days.
 
 
 11
 Q. Ten days?
 
 
 12
 A. Yes.
 
 
 13
 Q. And then you wouldn't have to have the applications for any at that time.
 
 
 14
 A. All right. That's fine. I was thinking I would have to have the applications at that time.
 
 
 15
 Q. All right. So, we could make that, say, like January 12th? Is that enough time?
 
 
 16
 A. That's fine.
 
 
 17
 Accordingly, Zomer-Maher was granted a one-week continuance to January 12, 1995.
 
 
 18
 At the January 12, 1995 hearing, Zomer-Maher's counsel requested an additional one-week continuance, informing the court that Zomer-Maher had obtained a marriage license, but the detention facilities would not authorize the marriage. Counsel explained that Zomer-Maher was in the process of raising money for bail, which would allow him to marry his fiance and file an I-130 visa petition for adjustment of status. When asked to respond by the IJ to the request for a continuance of one week, INS counsel stated that he was opposed because "[c]ounsel has had the opportunity to have time in the past, and absent an approved I-130, he's in custody, costing the Service significant funds to detain, that we can't simply prolong this for a lengthy time in order for him to first get married; second, file an I-130. Marriage while in proceedings have a proper investigation of the bonafides of the marriage ... That it is time to go forward." The IJ denied the request for a continuance based on the factors indicated by INS counsel and ordered Zomer-Maher deported to Jordan.
 
 
 19
 By order issued September 14, 1995, the BIA dismissed Zomer-Maher's appeal, ruling that Zomer-Maher "ha[d] not demonstrated on appeal that he had good cause for a continuance, or that he was deprived of a full and fair hearing by the denial of a continuance."
 
 II
 Merits
 
 20
 Zomer-Maher contends that it was an abuse of discretion for the IJ to deny his request for a continuance. This contention has merit.
 
 
 21
 The applicable regulations provide that the IJ may grant a motion for continuance for good cause shown, but does not define good cause. See 8 C.F.R. §§ 3.29, 242.13. "We have held, in the context of immigration proceedings, that 'the decision to grant or deny continuances is in the sound discretion of the trial judge....' " Baires v. INS, 856 F.2d 89, 91 (9th Cir.1988) (quoting Rios-Berrios v. INS, 776 F.2d 859, 862 (9th Cir.1985)). "But we have also observed that the judge's discretion is limited. In particular, we have cautioned that a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the alien's statutory rights merely an empty formality." Id. (citations and internal quotations omitted). We reverse when we conclude that the IJ's actions constitute an abuse of discretion. Id.
 
 
 22
 "The question whether denial of a continuance in an immigration proceeding constitutes an abuse of discretion cannot be decided through the application of bright-line rules; it must be decided on a case by case basis according to the facts and circumstances of each case." Id. In Baires, we identified three factors which should be taken into account when determining whether the IJ abused his or her discretion in denying a continuance: (1) the inconvenience to the immigration court; (2) whether the need for a continuance is based on the alien's unreasonable conduct; (3) and the length and number of continuances which were previously granted. Id. at 92-93.
 
 
 23
 Here, with respect to the inconvenience to the immigration court, it has already been pointed out that one of the three weeks of continuance time granted was for the benefit of the IJ. In addition, although counsel initially sought a second continuance of 30 days to look into various avenues of relief for Zomer-Maher, and to begin applying for such forms of relief, counsel agreed to a mere one-week continuance and, after one week, indicated to the court what form of relief Zomer-Maher would seek and how he wished to proceed. Under the circumstances, there is nothing in the record to suggest that a further continuance of one week would have inconvenienced the immigration court in any way.
 
 
 24
 Second, with respect to whether the need for the continuance was the result of misconduct by Zomer-Maher, the record reveals no misconduct at all. After obtaining a brief continuance, Zomer-Maher quickly obtained counsel. Counsel, in turn, after receiving a second brief continuance quickly prepared Zomer-Maher's case. We also note that Zomer-Maher's counsel's conduct at the two hearings he attended appears exemplary. Even though the INS's OSC was improperly prepared, as the IJ indicated, and even though INS counsel did not have copies of certain documents relevant to Zomer-Maher's eligibility for various forms of relief from deportation, rather than waste the IJ's time quibbling over formalities, counsel conceded deportability and ineligibility for various forms of relief. Thus, there is no evidence in the record whatsoever that either Zomer-Maher or counsel Klein sought a further continuance simply for purposes of delay.
 
 
 25
 Finally, Zomer-Maher's first continuance was for only two weeks--one week of which was for the convenience of the IJ, who had scheduled a vacation, rather than for Zomer-Maher, who was in INS detention and wished to hold a bond hearing as soon as possible. The second continuance was for only one week and appeared to contemplate an additional continuance to process whatever applications for relief were made known to counsel upon closer examination of Zomer-Maher's case. Thus, altogether, Zomer-Maher had, at the time of the third hearing, two continuances for a total of three weeks, one week of which was for the benefit of the IJ's scheduled vacation.
 
 
 26
 Therefore, under the facts and circumstances of this case, and considering the three pertinent factors set out in Baires, the IJ abused his discretion when he denied Zomer-Maher's motion for a continuance at the January 12, 1995 hearing. Accordingly, this petition for review is granted and the case is remanded to the BIA for a decision consistent with this disposition.[1]
 
 
 27
 PETITION FOR REVIEW GRANTED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. See Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 To the extent that the footnote in the BIA's order suggests that the IJ's decision was reasonable in light of Zomer-Maher's subsequent failure to present new facts to the BIA regarding whether, inter alia, Zomer-Maher married his fiance, we note, first, that it is our understanding that new evidence should be presented by way of a motion to reopen and that, consequently, Zomer-Maher cannot be faulted for failing to do so here. Second, Zomer-Maher has produced non-record information here indicating that he did subsequently marry his fiancee, very shortly after being released on bond. Finally, to the extent that the INS has suggested that Zomer-Maher's marriage lacked bona fides, the record shows that Zomer-Maher obtained a marriage certificate on December 1, 1994, prior to the issuance of the OSC. In addition, the IJ stated in his opinion that Zomer-Maher had had an ongoing relationship with his fiancee for several years. Thus, any suggestion that the marriage Zomer-Maher sought to enter into is a fraud is completely speculative and based on no evidence included in the record before us