92 F.3d 1192
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jesus GUTIERREZ-TAVARES, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70210.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 6, 1995*.
Submission Vacated Dec. 22, 1995.
Resubmitted Jan. 12, 1996.
Decided July 30, 1996.
 
 1
 Before: GOODWIN, and REINHARDT, Circuit Judges and KING, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 This application presents numerous statutory and constitutional issues. Gutierrez-Tavares claims the immigration judge and the Board of Immigration Appeals (BIA) erred in finding he was not a citizen, in finding him deportable on the basis of convictions which he was still challenging, and in finding he did not qualify for a waiver of deportation. Further, he claims that the deportation process violated due process and his right to equal protection of the laws. We deny the petition.
 
 I.
 
 4
 Gutierrez-Tavares was born in Mexico to a U.S. citizen mother in 1948. In 1954, at the age of six, he was admitted to the United States as a lawful permanent resident. He has resided here since that time.
 
 
 5
 In 1985, after Gutierrez-Tavares was convicted in the Arizona Superior Court of possession of heroin for the purpose of sale, and of possession of cocaine, the I.N.S. served him with a notice of deportation. The I.N.S. took no further action until eight years later, in 1993, when it held a deportation hearing at the prison where Gutierrez-Tavares was incarcerated.
 
 
 6
 At the deportation hearing, Gutierrez-Tavares claimed derivative U.S. citizenship through his mother. The immigration judge held that Gutierrez-Tavares was not a U.S. citizen, however. For while Gutierrez-Tavares' mother was born in the U.S., she had failed to live in the U.S. for ten years as required by the statute. Finding Gutierrez-Tavares deportable on the basis of his conviction, and ineligible for a waiver, the immigration judge issued an order of deportation.
 
 
 7
 Gutierrez-Tavares appealed the order to the BIA. Gutierrez-Tavares made several arguments to the BIA, including those he raises now before this court. The BIA held that it did not have jurisdiction to review Gutierrez-Tavares' constitutional claims, and affirmed the order of deportation in all other respects. Gutierrez-Tavares then filed the current petition.
 
 II. STATUTORY CLAIMS
 A. U.S. Citizenship
 
 8
 The BIA did not err in determining that Gutierrez-Tavares could not claim derivative citizenship through his mother, a U.S. born citizen. The Nationality Act of 1940, 8 U.S.C. § 601(g) (1946), the statute in force the year of Gutierrez-Tavares' birth, governs his claim of derivative citizenship. Runnett v. Shultz, 901 F.2d 782 (9th Cir.1990). The 1940 Act provides for derivative citizenship for children born to U.S. citizens. However, the statute contains a residency requirement for the parent, which Gutierrez-Tavares' mother did not meet. Therefore, his claim of derivative citizenship under the statute must fail.
 
 
 9
 Gutierrez-Tavares erroneously contends that a savings clause in the 1946 statute preserved his mother's ability to pass citizenship to her children under the Nationality Act of 1934. Not only did Congress repeal the savings clause three months prior to Gutierrez-Tavares' birth, but also, by its express terms, the savings clause does not apply to claims of derivative citizenship. Rodriguez-Romero v. I.N.S., 434 F.2d 1022, 1024 (9th Cir.1970), cert. denied 401 U.S. 976 (1971) (holding that the savings clause did not extend to claims of nationality at birth, "but was expressly limited to the preservation of provisions relating to nationality through naturalization and to several miscellaneous matters irrelevant to appellant's claim.")
 
 B. Finality of Convictions
 
 10
 Gutierrez-Tavares' argument that his convictions were not final, and thus could not serve as a basis for termination, is without merit. A conviction is final for purposes of the immigration laws once a party exhausts all direct appeals as of right. Morales-Alvarado v. I.N.S., 655 F.2d 172 (1981). The only court to which Gutierrez-Tavares had a right of direct appeal, the Court of Appeals of Arizona, affirmed Gutierrez-Tavares' convictions prior to the deportation hearing. Thus, Gutierrez-Tavares exhausted his direct appeals as of right, and his convictions were final for purposes of the immigration laws. His intention to collaterally attack his convictions by way of postconviction relief did not affect this finality.
 
 C. Waiver of Deportation
 
 11
 Gutierrez-Tavares contends that the immigration judge abused his discretion in pretermitting Gutierrez-Tavares' application for a waiver of deportation under section 212(c) of the Immigration and Nationality Act (INA), (8 U.S.C. § 1182(c)), on the basis that Gutierrez-Tavares had served more than five years in prison for the conviction of two aggravated felonies. Gutierrez-Tavares argues that his convictions can not serve to make him ineligible for § 212(c) waiver because Congress did not enact § 212(c) until after he was convicted. We rejected this argument in Samaniego-Meraz, 53 F.3d 254, holding that Congress intended the eligibility bar to apply "regardless of the date of the underlying conviction." Id. at 256.
 
 III. CONSTITUTIONAL CLAIMS
 A. Due Process
 
 12
 The government must provide aliens subject to deportation procedural due process of law. Burgos-Abril, 58 F.3d 475 (9th Cir.1995). Gutierrez-Tavares claims that due process requires that he have access to the C.F.R. in order to properly prepare a defense to deportation, citing Bounds v. Smith, 430 U.S. 817 (1977), and that the I.N.S. allow an inmate representative to represent him at his deportation hearing. In addition, he claims that the eight year delay in conducting his deportation hearing violated due process.
 
 
 13
 (1.) Right of Access to the C.F.R.
 
 
 14
 Whether or not the right of access to the courts, as enunciated in Bounds v. Smith, 430 U.S. 817 (1977) extends to deportation hearings, neither access to the courts nor due process requires that all aliens subject to deportation have access to the C.F.R. Even where the Constitution requires access to a library, "the Prison need not provide its inmates with a library that results in the best possible access to the courts. Rather, the Prison must provide its inmates with a library that meets minimum constitutional standards." Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 856 (1985).
 
 
 15
 Access to the INA meets this minimum standard as well as the due process requirement of an opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). The INA provides the substantive law regarding deportation, including available defenses and waiver provisions. The C.F.R.'s procedural provisions, while helpful, are not necessary to a meaningful preparation for a deportation hearing.
 
 
 16
 (2.) Right to Prison Inmate Legal Representatives
 
 
 17
 An alien subject to deportation does not have a constitutional right to the appointment of counsel at government expense. Rios-Berrios v. I.N.S., 776 F.2d 859, 862 (1985). Nonetheless, we have held that due process entitles an alien to counsel of his choice under the terms of the INA. Id. and Orantes-Hernandez v. Thornburgh, 919 F.2d 549 (9th Cir.1990). The I.N.S., at the direction of Congress, has issued regulations concerning who is qualified to serve as counsel. 8 C.F.R. § 292.1. While the regulations allow for non-attorneys to serve as representatives, none of the authorized categories would appear to require an immigration judge to allow the appearance of a fellow inmate as an incarcerated alien's proctorial representative. Id. It may be that due process mandates the approval of fellow inmate representatives for incarcerated aliens. However, we need not, and do not, decide that issue here because Gutierrez-Tavares has failed to show any prejudice from the absence of such representation. Gutierrez-Tavares does not contend that the inmate representative could prove Gutierrez-Tavares' mother fulfilled the requisite residency requirement to make him a citizen. Nor does he contend that the inmate representative could prove that Gutierrez-Tavares' should have received a waiver. Absent prejudice, the alleged due process violation does not warrant reversal.
 
 
 18
 (3.) Delay in Holding the Deportation Hearing
 
 
 19
 Gutierrez-Tavares claims that the eight year delay between the notification of deportation and his actual deportation violated (1) the Immigration and Nationality Act's requirement for expeditious hearings; and (2) his right to due process. He claims prejudice on two grounds. First, two witnesses who may have been able to establish his citizenship, his mother and aunt, both died during the interim period. Second, had the deportation hearing occurred in an expedited manner, Gutierrez-Tavares would not yet have served five years imprisonment at the time of the hearing, and could have been eligible for a waiver of deportation under § 212(c). Indeed, at the time of the notification of deportation, the law barring aggravated felons who had served five years in prison from applying for a waiver did not exist.
 
 
 20
 Section 1252(i) of the Immigration and Nationality Act provides no relief to Gutierrez-Tavares. While that provision requires speedy deportation hearings, this court has held that no private cause of action exists under § 1252(i). Campos v. I.N.S., 62 F.3d 311, 314 (9th Cir.1995) and Urbina-Maurico v. I.N.S., 989 F.2d 1085 (9th Cir.1993).
 
 
 21
 Nor does the Constitution offer a remedy. As discussed, due process requires the opportunity to be heard at a meaningful time in a meaningful manner. Mathews v. Eldridge, 424 U.S. 319. Gutierrez-Tavares' argues that delay causes a risk of error to arise because witnesses may become unavailable. However, nothing prevents an inmate from gathering affidavits prior to the hearing. Further, in the immigration context witnesses are as likely to be available later as earlier because witnesses may reside outside the United States. Moreover, unlike criminal trials where witnesses usually testify regarding the criminal incident itself, and early trial is desirable to preserve the "freshness" of witness' memories, witnesses in deportation hearings usually do not testify to recent events. Rather they testify to long term relationships or the character of the alien. Thus a delayed hearing can not be termed "fundamentally unfair."
 
 
 22
 Gutierrez-Tavares also claims the delay violated due process because he could no longer apply for a waiver of deportation. However, Gutierrez-Tavares' only right to waiver arose from a statute which Congress later modified. Due process does not prevent Congress from changing the law at any time it sees fit, so long as the law is not retroactive. We have already determined that the amendment barring waiver for aggravated felons who have served more than five years is not retroactive. Samaniego-Meraz, 53 F.3d 254. While Gutierrez-Tavares could have applied for a waiver in 1985, the fact he could not apply for that waiver in 1993 does not amount to "erroneous" deprivation. The legislative process satisfied any due process the denial of Gutierrez-Tavares' "right to waiver" required.
 
 
 23
 B. "Substantive Due Process "
 
 
 24
 Traditionally, courts appeared to believe that the plenary power doctrine prohibited any substantive constitutional review of immigration laws. "Our cases have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the government's political departments largely immune from judicial control." Fiallo v. Bell, 430 U.S. 787 (1977) (internal quotations and citation omitted). However, we recently held that an alien's first amendment rights in the deportation context did not differ from an alien's first amendment rights outside the deportation context (which are the same as a citizen's first amendment rights). American Arab Anti-Discrimination Com. v. Reno, 70 F.3d 1045 (9th Cir.1995). In addressing the plenary power doctrine, the court stated, "Since resident aliens have constitutional rights, it follows that Congress may not ignore them in the exercise of its 'plenary' power of deportation." Id. at 1065 (citing J. Murphy's concurrence in Bridges v. Wixon, 326 U.S. 135, 161 (1945)). While we addressed a first amendment claim in American-Arab Anti-Discrimination, we recognized that its analysis applied equally to those protections of the Bill of Rights that are not restricted to citizens, such as due process and equal protection. Id. at 1063-1064.
 
 
 25
 (1) The Right Not to Be Separated From His Family
 
 
 26
 In Moore v. City of East Cleveland, 431 U.S. 494 (1977), the Court held that the Fourteenth Amendment protects the family unit. While the Court did not clearly articulate a standard of review applied to regulations which limited living arrangement choices, there can be no question that the government interest here outweighs the burden on Gutierrez-Tavares' due process rights. Just as Congress has the power to separate a person from his or her family in order to imprison one for a criminal conviction, or draft one into the military, Congress has the power to separate a person from his or her family for deportation for committing an aggravated felony. Congress has the power to employ deportation as a practical means to the government's law enforcement ends.
 
 
 27
 (2) Nationality Act of 1940 and Equal Protection
 
 
 28
 Gutierrez-Tavares claims that the Nationality Act of 1940 violates his right to equal protection of the laws by treating those born between 1940 and 1986, (the time in which the 1940 Act was in force), differently from those born before or after those dates. As this distinction does not involve any "suspect class," we utilize a rational basis standard of review.
 
 
 29
 Congress has a rational basis for changing the residency requirements for derivative citizenship in response to changing immigration needs. At times Congress will decide to limit the number of persons to whom it grants citizenship, and at other times Congress may decide to expand that number. There is nothing irrational about changing the ebb and flow of our immigration through modification of derivative citizenship requirements. The statute does not violate the Fifth Amendment.
 
 
 30
 (3) The Distinction Between Derivative Citizenship
 
 
 31
 Requirements for Naturalized Citizen's Children
 
 
 32
 and for Native Citizen's Children
 
 
 33
 Gutierrez-Tavares argues that the government impermissibly places more exacting strictures on derivative citizenship for children of U.S. born citizens than for children of naturalized citizens, violating Gutierrez-Tavares' right to equal protection of the laws. Again, as his point does not involve a suspect class, we review for rational basis.
 
 
 34
 In order to become a naturalized citizen, a person must maintain residency in the U.S. for a fixed minimum period of years and express an intent to remain a U.S. resident in the future. No similar requirements apply to a person born in the United States. One born in the United States automatically becomes a citizen regardless of his or her length of residency. Thus, in regulating the passing of citizenship to one's children, Congress has a rational basis for requiring a particular number of years of residency for parents who were born citizens, and not requiring such residency for parents who were naturalized.
 
 
 35
 PETITION DENIED.
 
 
 36
 Judge REINHARDT concurs in the result.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 Honorable Sam King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3