Carlos MENDOZA, Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 99–71259.
I & NS No. A70 961 814.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 2001.

Decided April 18, 2001.

Before HUG and B. FLETCHER, Circuit Judges, and KING, District Judge.*

### MEMORANDUM **

This case involves a Peruvian national who has applied for political asylum on the ground that his prior employment with a Peruvian police antiterrorist unit places him at risk of persecution by members of the Shining Path and Tupac Amaru ("MRTA") guerrilla groups, should he be deported back to Peru. Because we find the petitioner to be statutorily ineligible for asylum based on his admitted participation in the torture of Peruvian detain-

ees, we affirm the decision of the Board of Immigration Appeals ("BIA") and deny the petition.

### I.

The petitioner, Carlos Mendoza, is a 33 year-old native and citizen of Peru. On his asylum application and at his hearing before the Immigration Judge ("IJ"), Mendoza testified that he had been employed from 1988–90 as chief of a special antiterrorist unit of the Peruvian police force. He began receiving telephone death threats from the Shining Path and MRTA. In 1990, members of these groups came to his home and left bombs and painted death threats in blood on his door. Shortly thereafter, as a result of these threats, Mendoza moved away from his family and began living at the police station.

Mendoza further testified that as a result of his work, he suffered psychological problems that caused him to wake up screaming and want to shoot at anything that moved. On one occasion he was involved in the arrest of three terrorists; they threatened to kill him, and were subsequently released from prison. Mendoza was also once shot at while riding in a station wagon. In March 1990, the guerrillas telephoned Mendoza's home; upon being informed that Mendoza no longer lived there, the guerrillas threatened to kill his family. Mendoza's uncle, Antonio Mendoza, who also worked for an antiterrorist section of the Peruvian government, was killed in a drive-by shooting by terrorists in 1990. At the end of 1990, Mendoza deserted the police force and eventually left Peru in March 1991, because he believed his life and the lives of his family were at risk. Following his

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36–3.

departure, his family continued to receive telephone calls asking where he was and threatening him with death.

On April 10, 1991, Mendoza entered the U.S. without inspection at San Ysidro, California. On February 10, 1994, Mendoza applied for asylum under the Immigration and Nationality Act ("INA") § 208 (codified at 8 U.S.C. § 1158), and withholding of deportation under INA § 243(h) (codified at 8 U.S.C. § 1253(h)).

On December 19, 1995, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause charging Mendoza with deportability under former INA § 241(a)(1)(B) (codified at 8 U.S.C. § 1251(a)(1)(B)), for having entered the country without inspection. A master calendar deportation hearing was held on May 14, 1996, at which time Mendoza, appearing alone, was asked by the IJ whether he wished to be represented by an attorney. Mendoza informed the IJ that he wished to be so represented, and the IJ continued the case. However, the IJ also advised Mendoza that if he could not obtain counsel, he "should be prepared to speak for [himself] at the next hearing." One month later, Mendoza again appeared unrepresented before the IJ, at which time he agreed to speak for himself and admitted his Peruvian nationality as well as the INS allegations of illegal entry without inspection. He then requested asylum, withholding of deportation, and voluntary departure under INA § 244(e) (codified at 8 U.S.C. § 1254(e)). The IJ subsequently scheduled a hearing for January 6, 1997, on the merits of Mendoza's application.

Mendoza appeared at the merits hearing with an attorney, Carlos Vellanoweth, whom he had hired two weeks earlier. Vellanoweth requested another continuance on the ground that he had just been retained and believed that the hearing was a master calendar and not a merits hearing. Citing the procedural history of the case and his full calendar, the IJ denied the request as being without good cause and offered Mendoza a choice: to proceed pro se, or to proceed with his unprepared counsel. Following a short off-the-record break, Vellanoweth reiterated that he was unprepared for the case and moved to withdraw as Mendoza's attorney. After obtaining Mendoza's consent to the motion, the IJ permitted Vellanoweth to withdraw and proceeded with the merits hearing.

For the rest of the hearing, Mendoza did not present his own case, but only responded to questions from the IJ. In the course of the questioning, Mendoza admitted, *inter alia,* that he had participated in three forms of torture of detainees while working for the Peruvian police force. Specifically, Mendoza testified that he was trained in and participated on several occasions in "la tina," involving the repeated head-first submersion of suspected terrorists in water in order to compel them to confess; the twisting backwards of arms, also to obtain confessions; and the administering of electric shock to detainees' genitals. With respect to the first two practices, Mendoza stated that he acted as the "good guy" in a two-man team to induce detainees to divulge information. With respect to the latter, Mendoza testified that he held victims up so they wouldn't move.

The IJ subsequently rendered an oral decision rejecting Mendoza's asylum claim, as well as his applications for withholding of deportation and voluntary departure. The IJ found Mendoza's admissions of prior police practices to be credible and to constitute past persecution of others, rendering him statutorily ineligible for asylum and withholding of deportation pursuant to 8 U.S.C. §§ 1101(a)(42) and 1253(h)(2)(A). At the same time, the IJ found that Mendoza had "submitted insufficient specific facts as well as concrete and/or credible evidence from which [to] infer that he has

been persecuted or has a well-founded fear of persecution in Peru" on account of a protected ground. Shortly thereafter, Mendoza timely filed a notice of appeal to the BIA (through newly-retained counsel of record).

On September 2, 1999, the BIA entered its final order dismissing Mendoza's appeal. Without reaching the question of whether Mendoza himself had suffered past persecution or demonstrated a well-founded fear of future persecution, and without making an explicit credibility determination, the BIA affirmed the IJ's determination that Mendoza was statutorily ineligible for asylum, withholding of deportation, and voluntary departure. Specifically, the BIA found that Mendoza had engaged in past persecution, and that the IJ's actions forcing Mendoza to proceed pro se did not violate his right to due process because he had not demonstrated prejudice from the lack of representation. Mendoza timely filed a petition for review in our court on September 30, 1999.

## II.

We have jurisdiction pursuant to section 106(a) of the INA, 8 U.S .C. § 1105a(a), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). This case falls within IIRIRA's "transitional rules," which apply to deportation proceedings that were commenced before April 1, 1997 and resulted in final deportation orders issued after October 30, 1996. The transitional rules provide that, with certain exceptions not relevant here, the court of appeals has jurisdiction under old section 106(a) of the INA.[1]

■ In cases where the Board has exercised its power to conduct a de novo review of the IJ's decision, we only review the decision of the BIA. *Yepes–Prado v. INS*, 10 F.3d 1363, 1366 (9th Cir.1993). The BIA's factual findings are reviewed under the substantial evidence standard. *Paredes–Urrestarazu*, 36 F.3d 801, 807 (9th Cir.1994). The BIA's conclusions regarding questions of law are reviewed de novo, *id.*, except to the extent that they involve interpretations of ambiguous statutory provisions that were (either explicitly or implicitly) intended by Congress to be left to the agency's discretion. In such cases, we accord deference to the BIA's reasonable interpretations of such provisions, so long as they do not contravene other indications of congressional intent. *INS v. Aguirre–Aguirre*, 526 U.S. 415, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999); *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

## III.

■ The definition of a "refugee" specifically excludes "any person who ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Identical language prohibits granting withholding of deportation to such a person. 8 U.S.C. § 1253(h)(2)(A). Under 8 C.F.R. §§ 208.13(c)(2)(ii) and 208.16(c)(2), if there is evidence that an applicant for asylum or withholding of deportation has himself participated or assisted in persecution, the applicant bears the burden of demonstrating by a preponderance of the evidence that he was not involved in such acts.

Mendoza presents two major issues to be considered in this petition. First, Mendoza argues that the BIA erred in finding him statutorily ineligible for asylum based on past persecution, because (1) he did not

---

1. *See* IIRIRA §§ 309(c)(1) and (4), 110 Stat. 3009–625–26.

actively participate in torture, but only played the role of questioner; and (2) whatever persecution he may have engaged in was not on account of race, religion, political opinion, or any other protected ground.

■ Mendoza's first argument is easily dismissed. According to his own testimony before the IJ, Mendoza was not simply a passive participant in that he also admitted to holding prisoners physically in place while they were being tortured, and in any event the distinction between being an active torturer and "mere" support person is dubious at best. Under the substantial evidence standard, we can reverse the BIA's factual findings only if evidence in the record "compels" a contrary conclusion, *INS v. Elias–Zacarias*, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), and Mendoza has offered nothing of the sort. Accordingly, we credit the BIA's finding that Mendoza participated and assisted in past persecution.

Furthermore, Mendoza's contention that such persecution was not on account of a protected ground is also meritless. Mendoza's testimony confirms that the detainees subjected to police torture were suspected members of the Shining Path and MRTA—both groups committed to the overthrow of the Peruvian government. Mendoza's argument that such practices were employed apolitically (i.e., for purposes of public safety) is facially implausible, given that his own asylum application rests in large part on the claim that the persecution *he* suffered at the hands of these groups *was* on account of imputed political opinion. To the extent that the BIA's determination that Mendoza engaged in impermissible persecution constitutes a factual finding, substantial evidence in the record supports it.

The second and more serious issue raised by Mendoza is whether his statutory and due process rights to an attorney were violated by the IJ's decision to require him to proceed pro se. In essence, the outcome of Mendoza's petition hinges on the propriety of the IJ's denial of an additional continuance to allow Vellanoweth time to prepare, forcing Mendoza to proceed without representation. By implication, Mendoza argues that his entire testimony regarding his past persecution of suspected terrorists in Peru was tainted by his lack of representation. To analyze this claim, three issues are paramount: whether Mendoza was prejudiced by his lack of representation; whether the IJ abused his discretion in denying Mendoza another continuance for lack of good cause; and whether Mendoza knowingly and voluntarily waived his right to counsel before proceeding pro se.

■ INA § 240(b)(4) (codified at 8 U.S.C. § 1229a(b)(4)), states, in pertinent part, that an "alien shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings." This statutory right has also been codified in the applicable INS regulations. *See* 8 C.F.R. §§ 3.16(b), 240.3, 292.1, and 292.5. Although Congress has plenary power under the Constitution to regulate all matters relating to immigration, *see* U.S. Const. Art. I, § 8, aliens are "persons" under the Fifth and Fourteenth Amendments and have a due process right to obtain counsel. *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Rios–Berrios v. INS*, 776 F.2d 859, 862 (9th Cir.1985). As we stated in *Orantes–Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir.1990), "aliens have a due process right to obtain counsel at their own expense. We have 'consistently emphasized the critical role of counsel in deportation proceedings. We have characterized an alien's right to counsel as 'fundamental' and have warned the INS

not to treat it casually' ...." *Id.* at 554 (citations omitted).

■ Under this circuit's controlling precedents, both the statutory and constitutional claims [2] require a showing of prejudice to succeed.[3] *Compare Acewicz v. INS,* 984 F.2d 1056, 1062 (9th Cir.1993) ("Violation of an INS regulation will only invalidate deportation proceedings where the violation prejudices the interests of the alien."), *with Perez–Lastor v. INS,* 208 F.3d 773, 777 (9th Cir.2000) ("Deportation proceedings violate due process if the alien does not receive a 'full and fair' hearing and suffers prejudice as a result of the inadequate proceedings."). We have defined the standard for demonstrating prejudice as follows: "Infringements of the right to counsel are prejudicial when counsel could have better marshalled specific facts or arguments in presenting the petitioner's case for asylum or withholding of deportation." *Acewicz,* 984 F.2d at 1062 (internal quotations omitted). "What type of evidence will successfully demonstrate prejudice depends on the BIA's reason for ruling against the petitioner." *Perez–Lastor,* 208 F.3d at 780 n. 8.

The BIA rejected the claim that Mendoza's due process rights had been violated on the ground that he had been accorded a full and fair hearing and been given an opportunity to apply for all available forms of relief. Furthermore, the BIA held that since Mendoza was statutorily ineligible for any relief, he had failed to demonstrate prejudice. We find this reasoning to be somewhat circular, given Mendoza's argument that he may not have been found statutorily ineligible had he been properly represented. Proceeding pro se, Mendoza did not present his own case at the immigration hearing, but simply answered the IJ's questions. Under *Acewicz* and *Perez–Lastor,* and in light of the BIA's reasons for denying his asylum application, Mendoza presents a colorable claim that his interests were prejudiced because an attorney could have "better marshalled the facts of his case." Indeed, although Mendoza cannot claim a due process or statutory right to counsel in order to present perjured testimony, *cf. Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) (finding no ineffectiveness of counsel where a lawyer refused to put on a client's perjured testimony), we find that his interests were almost certainly prejudiced by his lack of representation.

■ We conclude, nonetheless, that the IJ did not err in refusing to grant

2. Curiously, the BIA's decision did not discuss Mendoza's statutory right to an attorney, but focused only on his due process claim. However, this omission appears to be harmless, given that the statutory right simply codified the constitutional right without establishing a different standard or remedy. *See* INA § 292 (codified at 8 U.S.C. § 1362 (1982)); *Rios–Berrios,* 776 F.2d at 862.

3. To be sure, this circuit's leading cases leave open the possibility that the effective denial of counsel to an alien, if sufficiently egregious, may be prejudicial per se and thereby constitute a due process violation. *See, e.g., Rios–Berrios,* 776 F.2d at 863 ("We leave to another day the issue of whether there must be a showing of prejudice in a case in which counsel has effectively been denied."); *United* States v. Cerda–Pena, 799 F.2d 1374, 1377 (9th Cir.1986) ("While recognizing that an outright refusal to allow an alien the opportunity to obtain representation may be such an egregious violation of due process so as not to require any further showing of prejudice, this Court believes that an immigration judge's failure adequately to apprise an alien of his or her right to representation should only invalidate the deportation if actual prejudice is shown, as is the case with other violations of INS regulations and of due process."); *Colindres–Aguilar v. INS,* 819 F.2d 259, 261 (9th Cir.1987) ("it is unsettled whether there must be a showing of prejudice where ... counsel has been effectively denied"). However, as elaborated above, the IJ's actions in Mendoza's case do not appear to have been so egregious as to have been inherently prejudicial.

Mendoza's attorney another continuance before the start of the January 1997 merits hearing. Significantly, 8 C.F.R. § 242.13 (1997) states that the IJ "may grant a reasonable adjournment either at his or her own instance or, for good cause shown, upon application by the respondent or the Service." Furthermore, "[i]t is clear that the decision to grant or deny continuances is in the sound discretion of the trial judge and will not be overturned except on a showing of clear abuse." *Rios–Berrios*, 776 F.2d at 862 (citations omitted). In *Vides–Vides v. INS*, 783 F.2d 1463, 1469–70 (9th Cir.1986), we held that proceeding to hearing after an alien's failure to obtain counsel after four months and two continuances did not violate due process, because "the IJ had no option but to proceed to the hearing of evidence on the merits of the case." Given that the IJ had previously warned Mendoza of the consequences of failing to hire counsel and had already continued the hearing twice for a total of eight months, as well as the fact that Mendoza could offer no reason whatsoever for waiting until two weeks before the merits hearing to hire Vellanoweth, it can hardly be said that the IJ abused his discretion in denying the continuance.

In this case, Mendoza did obtain counsel (albeit just before the merits hearing), and the IJ did have the option to continue the case. However, there is nothing in the regulations or case law to suggest that the IJ was required to do so, or that the IJ's refusal amounted to an abuse of discretion. In sum, given the procedural history of the case, we find that the IJ did not err in denying the continuance and forcing Mendoza to proceed pro se.[4]

---

4. Mendoza also argues that Vellanoweth's lack of preparation and awareness that the hearing was a merits hearing, combined with his decision to withdraw from the case, amounted to ineffective assistance of counsel. Such claims normally should be raised in

## IV.

We therefore affirm the BIA's ruling that Mendoza's right to representation was not violated, albeit on a different ground. We also affirm the BIA's finding that Mendoza participated in acts of torture and assisted in persecution of others, thereby rendering him statutorily ineligible for asylum or withholding of deportation. Although Mendoza was probably prejudiced by the IJ's decision forcing him to proceed pro se, inasmuch as favorable testimony to counter his self-incriminating testimony could have been "better marshalled" by an attorney, the IJ did not abuse his discretion in refusing to grant another continuance. Accordingly, we deny Mendoza's petition for review.

Petition DENIED.

habeas corpus proceedings, which permit counsel "to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted." *United States v. Pope*, 841 F.2d 954, 958 (9th Cir.1988). Accordingly, we decline to address these claims here.